**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                            No. CR 11-0285 JB

YUMI DWAYNE GOREE,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Defendant's Objections to Presentence Report and Request for Variance, filed July 6, 2011 (Doc. 27)("Objections").[1] The Court held a hearing on September 14, 2011. The primary issues is whether the Presentence Investigation Report (disclosed June 9, 2011)("PSR") correctly included the events of Defendant Yumi Dwayne Goree's December 11, 2010 arrest as relevant conduct in the case before the Court. Because the December 11, 2010 arrest falls within the same course of conduct, under U.S.S.G. §1B1.3(a)(2), as the November 22, 2011 arrest for which the Court is sentencing Goree, the Court will overrule Goree's objections to paragraphs 16, 17, 18, 19, 20, 26, 27, 29, 55, and 99.

**PROCEDURAL BACKGROUND**

On February 10, 2011, a federal grand jury indicted Goree on charges that he was a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). See Redacted Indictment, filed February 10, 2011 (Doc. 2). On April 6, 2011, Plaintiff United States of America

---

[1] The Court will not address the request for a variance or any objection other than the objection to the use of the December 11, 2010 arrest as relevant conduct in this memorandum opinion and order. If necessary, the Court will address Goree's request for a variance and other objections at the sentencing hearing and in a subsequent sentencing memorandum.

and Goree entered into a plea agreement, made pursuant to rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, in which Goree pled guilty to the charge contained in the Indictment. See Plea Agreement ¶ 3, at 2, filed April 6, 2011 (Doc. 24).

The United States Probation Office ("USPO") disclosed the PSR in this matter on June 9, 2011. See PSR at 2. The PSR calculated Goree's total offense level as 25 with a criminal history category of V, and a guideline imprisonment range of 100 to 125 months. See PSR ¶101, at 33. On June 28, 2011, the USPO re-disclosed the PSR. See Re-Disclosed PSR at 2. On July 6, 2011, Goree filed his Objections, which raise a number objections to the information contained in the Re-Disclosed PSR. Goree contends that the Re-Disclosed PSR includes conduct unrelated to the federal offense on which he is being sentenced and that the total offense level should be 19 with a criminal history category of IV resulting in a guideline range of 46 to 57 months. See Objections at 1, 5. Goree objects to the inclusion of paragraphs 16 through 20 in the "offense conduct" section of the Re-Disclosed PSR, because those paragraphs relate to Goree's December 11, 2010 arrest and are not relevant conduct to the November 22, 2010 arrest for which the Court is sentencing him. See Objections ¶¶ 3-7, at 2-4. Goree also objects to paragraph 26, to the extent that it includes in the guidelines calculation weapons found on December 11, 2010. See Objections ¶ 9, at 4. Goree objects to paragraph 27 to the extent that it assesses a 2-level increase for possession of between three and seven firearms, because it includes weapons from the December 11, 2010 arrest. See Objections ¶ 10, at 4. Goree further objects to paragraph 29 to the extent that it assesses a 4-level increase for possession of firearms not charged in this case in connection with the December 11, 2010 arrest. See Objections ¶ 11, at 4. Finally, Goree objects to the guideline calculation in paragraph 99. See Objections ¶ 14, at 5.

Goree also raises objections unrelated to the December 11, 2011 arrest conduct. Goree

objects to the Re-Disclosed PSR's "custodial status" section to the extent it implies that Goree will receive credit for 142 days in custody as of July 8, 2011. See Objections ¶ 2, at 2. Goree also argues that the federal and state sentences should run concurrently. See Objections ¶ 2, at 2. Goree objects to paragraph 55 to the extent that it fails to mention that the PSR interview was conducted via video conference. See Objections ¶ 12, at 5. Lastly, Goree objects to paragraph 56 to the extent that it contains a comment on Goree's silence. See Objections ¶ 13, at 5.

On July 13, 2011, the United States filed response to Goree's Objections. See United States' Responses to Defendant's Formal Objections to the Presentence Report and Request for Variance, Doc. 27, filed July 13, 2011 (Doc. 29)("Response"). The United States does not object to amending the PSR to reflect that the PSR interview took place via video conference. See Response ¶ 5, at 6. The United States also does not oppose concurrent sentences for the state and federal charges. See Response ¶ 1, at 2.

The United States argues that whether Goree should receive 142 days of credit is not properly before the Court, because credit should be computed following the commencement of a sentence. See Response ¶1, at 1-2 (citing 18 U.S.C. § 3585(b); United States v. Wilson, 112 U.S. 329, 330 (1992)). The United States argues that the December 11, 2010 arrest is relevant conduct because it is part of the same course of conduct. See Response ¶ 2, at 2-3 (citing U.S.S.G. § 1B1.3(a)(2)). The United States asserts that the November 22, 2011 arrest, for which the Court is sentencing Goree, and the December 11, 2011 arrest fall within the same course of conduct, because of the degree of similarity of the offenses, the regularity of offenses, and the time interval between the offenses. See Response ¶ 2, at 2-5. The United States contends that, for relevant conduct need not be adjudicated or result in a conviction; the United States need only prove the conduct by a preponderance of the evidence. See Response ¶ 3, at 5. Finally, the United States argues that the

PSR does not impermissibly comment on Goree's silence, because such silence may bear upon the determination of lack of remorse or acceptance of responsibility, so long as no adverse inference is drawn from the silence in relation to factual determinations. See Response ¶ 6, at 7.

On August 8, 2011, the United States submitted Goree's state criminal complaint and other documents concerning Goree's state case as proof of the December 11, 2010 arrest. See Letter from Shammara Henderson to the Court at 1 (dated August 8, 2011), filed October 18, 2011 (Doc. 35)("Henderson Letter"). The United States asserted that defense counsel, Federal Public Defender Stephen McCue, stipulated to the admission of those documents as proof of the December 11, 2010 incident. See Henderson Letter at 1.

The Court held a hearing on September 14, 2011. At the hearing, Goree informed the Court that the United States has agreed to a modification to the plea agreement to allow Goree to ask for a variance. See Transcript of Hearing at 4:8-12 (September 4, 2011)(McCue)("Tr.").[2] Goree stated that his request is ultimately that the Court impose a sentence of 48 months. See Tr. at 4:13-14 (McCue). Goree explained that growing up in foster care played a large role in why he ended up in the criminal justice system, but that he is making progress in his life. See Tr. at 4:19-6 (McCue). Goree argued that a sentence of 48 months to run concurrent with a state sentence that is yet to be imposed, would be sufficient but not greater than necessary to satisfy sentencing goals. See Tr. at 5:12-6:5 (McCue).

The United States argued that the conduct involved in the December 11, 2010 arrest are the same acts as those involved in the case before the Court. See Tr. at 6:10-7:3 (Henderson). The United States asserted that the issue of credit for time served is moot if the Court makes the federal

---

[2]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

sentence concurrent with the state sentence.  See Tr. at 7:4-8 (Henderson).  The United States further asserted that the sentencing guidelines recommend that the sentences run concurrently if the Court finds that the state case is relevant conduct in this matter.  See Tr. at 7:8-11 (Henderson).

Goree argued that "unadjudicated conduct is driving the bus" and that his situation demonstrates "why the guidelines were declared unconstitutional and were only saved by being found to be advisory."  Tr. at 7:14-18 (McCue).  Goree argued that he is really being sentenced for unadjudicated conduct that requires a lesser standard of proof.  See Tr. at 7:20-23 (McCue).

## LAW REGARDING RELEVANT CONDUCT AT SENTENCING

In calculating an appropriate sentence, the guidelines consider a defendant's "offense of conviction and all relevant conduct under [U.S.S.G.] § 1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context."  U.S.S.G. § 1B1.1 cmt. n.1(H).  In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court of the United States referenced the Hobbs Act as an offense for which relevant conduct must be taken into account when imposing a sentence.  See 543 U.S. at 250-51.

> Congress' basic statutory goal -- a system that diminishes sentencing disparity -- depends for its success upon judicial efforts to determine, and to base punishment upon, the real conduct that underlies the crime of conviction.  That determination is particularly important in the federal system where crimes defined as, for example, "obstruct[ing], delay[ing], or affect[ing] commerce or the movement of any article or commodity in commerce, by . . . extortion," . . . can encompass a vast range of very different kinds of underlying conduct.

543 U.S. at 250-51 (quoting 18 U.S.C. § 1951(a))(emphasis in original).  The Supreme Court's reasoning in United States v. Booker suggests that the consideration of real conduct is necessary to effectuate Congress' purpose in enacting the guidelines.

Section 1B1.3 provides that the base offense level under the guidelines "shall be determined" based on the following:

>    (1)   (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
>
>           (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,
>
>    that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;
>
>    (2) solely with respect to offenses of a character for which [U.S.S.G.] § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction;
>
>    (3) all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions; and
>
>    (4) any other information specified in the applicable guideline.

U.S.S.G. § 1B1.3(a)(1)-(4). The court may consider, as relevant conduct, actions that have not resulted in a conviction. Pursuant to U.S.S.G. § 6A1.3, Commentary, evidentiary standards lower than a beyond a reasonable doubt are permitted to show relevant conduct. The court may rely upon reliable hearsay information, so long as there as the evidence meets the preponderance-of-the-evidence standard. See United States v. Vigil, 476 F.Supp.2d 1231, 1245 (D.N.M. 2007)(Browning J.). Accord. United States v. Schmidt, 353 F.App'x 132, 135 (10th Cir. 2009)("The district court's determination of 'relevant conduct' is a factual finding subject to a preponderance of the evidence standard, and clear error review."). The evidence and information upon which the court relies, however, must have sufficient indicia of reliability.

### 1.     **The Supreme Court's Relevant Conduct Jurisprudence.**

In Witte v. United States, 515 U.S. 389 (1995), the Supreme Court of the United States

upheld the use of uncharged conduct at sentencing against a double-jeopardy challenge. The defendant in Witte v. United States had been involved in an unsuccessful 1990 attempt to import marijuana and cocaine into the United States, and a 1991 attempt to import marijuana. See 515 U.S. at 392-93. In March 1991, a federal grand jury indicted the defendant for attempting to possess marijuana with intent to distribute in association with the defendant's latter attempt to import narcotics. See Witte v. United States, 515 U.S. at 392-93. At sentencing, the district court concluded that, because the 1990 attempt was part of the same continuing conspiracy, it was relevant conduct under U.S.S.G. § 1B1.3 and therefore calculated the defendant's base offense level based on the aggregate amount of drugs involved in both the 1990 and 1991 episodes. See Witte v. United States, 515 U.S. at 394.

In September 1992, a second federal grand jury indicted the defendant for conspiring and attempting to import cocaine in association with the 1990 activities. See Witte v. United States, 515 U.S. at 392-93. The defendant moved to dismiss the indictment, arguing that he had already been punished for the cocaine offenses, because the district court had considered those offenses relevant conduct at the sentencing for the 1991 marijuana offense. See Witte v. United States, 515 U.S. at 395. The district court agreed and dismissed the indictment, holding that punishment for the cocaine offenses would violate the Double Jeopardy Clause's prohibition against multiple punishments. See Witte v. United States, 515 U.S. at 395. The United States Court of Appeals for the Fifth Circuit reversed the district court and held that "the use of relevant conduct to increase the punishment of a charged offense does not punish the offender for the relevant conduct." United States v. Witte, 25 F.3d 250, 258 (5th Cir. 1994). In reaching this holding, the Fifth Circuit acknowledged that its conclusion was contrary to other United States Circuit Courts of Appeals, including the Tenth Circuit, that had previously considered this question. See United States v. Witte, 25 F.3d at 255 n.19

(citing United States v. Koonce, 945 F.2d 1145 (10th Cir. 1991)).

The Supreme Court granted certiorari to resolve the conflict between the circuits and affirmed the Fifth Circuit. See Witte v. United States, 515 U.S. at 395. In finding that the district court's consideration of the defendant's relevant conduct did not punish the defendant for that conduct, the Supreme Court concluded that "consideration of information about the defendant's character and conduct at sentencing does not result in 'punishment' for any offense other than the one of which the defendant was convicted." 515 U.S. at 401. The Supreme Court reasoned that sentencing courts had always considered relevant conduct and "the fact that the sentencing process has become more transparent under the Guidelines . . . does not mean that the defendant is now being punished for uncharged relevant conduct as though it were a distinct criminal offense." 515 U.S. at 402. Sentencing enhancements do not punish a defendant for uncharged offenses; rather, they reflect Congress' policy judgment "that a particular offense should receive a more serious sentence within the authorized range if it was either accompanied by or preceded by additional criminal activity." Witte v. United States, 515 U.S. at 403.

In United States v. Watts, 519 U.S. 148 (1997), the Supreme Court, in a per curiam opinion, relied upon the Witte v. United States holding and upheld, against a double-jeopardy challenge, a sentencing judge's use of conduct for which the defendant had been acquitted. In reaching its result in United States v. Watts, the Supreme Court noted that its conclusion was in accord with every Circuit Court of Appeals -- other than the United States Court of Appeals for the Ninth Circuit -- and that each had previously held that a sentencing court may consider conduct for which the defendant had been acquitted, if the government establishes that conduct by a preponderance of the evidence. See 519 U.S. at 149 (citing, among other authorities, United States v. Coleman, 947 F.2d 1424, 1428-29 (10th Cir. 1991)).

Two Ninth Circuit cases were on appeal in United States v. Watts.  See United States v. Putra, 78 F.3d 1386 (9th Cir. 1996); United States v. Watts, 67 F.3d 790 (9th Cir. 1995).  In United States v. Watts, a jury convicted Vernon Watts of possessing cocaine with intent to distribute, but acquitted him of using a firearm in relation to a drug offense. See 519 U.S. at 149-50.  Despite Watts' acquittal on the firearms count, the district court found, by a preponderance of the evidence, that Watts had possessed guns in connection with the drug offense and, at sentencing, added 2 offense levels to his base-offense level pursuant to U.S.S.G. § 2D1.1(b)(1).  See United States v. Watts, 519 U.S. at 150.  The Ninth Circuit vacated the sentence, holding that "a sentencing judge may not, 'under any standard of proof,' rely on facts of which the defendant was acquitted." United States v. Watts, 519 U.S. at 150 (quoting United States v. Watts, 67 F.3d at 797)(emphasis in original).

The second case on appeal in United States v. Watts, United States v. Putra, involved a defendant, Cheryl Putra, whom authorities had videotaped selling cocaine to a government informant on two separate occasions.  See United States v. Watts, 519 U.S. at 150.  The jury convicted Putra of aiding-and-abetting possession with intent to distribute one ounce of cocaine in association with the first sale, but acquitted her of aiding-and-abetting possession with intent to distribute five ounces of cocaine in association with the second transaction.  See United States v. Putra, 78 F.3d at 1387.  At the sentencing hearing, the district court determined that the United States had proven, by a preponderance of the evidence, that Putra had been involved in both sales, explained that the second sale was relevant under U.S.S.G. § 1B1.3, and aggregated the amounts of both sales to calculate Putra's base offense level under the Guidelines. See United States v. Watts, 519 U.S. at 151. "Reasoning that the jury's verdict of acquittal manifested an 'explicit rejection' of Putra's involvement in the [second] transaction," the Ninth Circuit reversed and vacated the

sentence. United States v. Watts, 519 U.S. at 151 (quoting United States v. Putra, 78 F.3d at 1389).

The Supreme Court began its analysis in United States v. Watts with 18 U.S.C. § 3661: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. See United States v. Watts, 519 U.S. at 151. According to the Supreme Court, 18 U.S.C. § 3661 embodies the codification of "the longstanding principle that sentencing courts have broad discretion to consider various kinds of information" and that "the Guidelines did not alter this aspect of the sentencing court's discretion." United States v. Watts, 519 U.S. at 151-52. The Supreme Court distinguished the different limitations on the presentation of evidence at trial and at sentencing: "Highly relevant -- if not essential -- to [the judge's] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." United States v. Watts, 519 U.S. at 151-52 (quoting Williams v. New York, 337 U.S. 241, 247 (1949)). The Supreme Court noted that, "under the pre-Guidelines sentencing regime, it was 'well established that a sentencing judge may take into account facts introduced at trial relating to other charges, even ones of which the defendant has been acquitted.'" United States v. Watts, 519 U.S. at 152 (quoting United States v. Donelson, 695 F.2d 583, 590 (D.C. Cir. 1982)(Scalia, J.)).

The Supreme Court then turned to the Guidelines. The Supreme Court acknowledged that the Guidelines, like 18 U.S.C. § 3661, articulate "in sweeping language the conduct that a sentencing court may consider in determining the applicable guideline range." United States v. Watts, 519 U.S. at 152-53 (citing U.S.S.G. § 1B1.3). The Supreme Court appeared to be persuaded by the Guidelines' conclusion that, at least for offenses involving "a pattern of misconduct that cannot readily be broken down into discrete, identifiable units that are meaningful for purposes of

sentencing," U.S.S.G. § 1B1.3 cmt. background, "relying on the entire range of conduct, regardless of the number of counts that are alleged <u>or on which a conviction is obtained</u>, appears to be the most reasonable approach to writing workable guidelines for these offenses," <u>United States v. Watts</u>, 519 U.S. at 153 (citing U.S.S.G. §1B1.3 cmt., backg'd)(emphasis original).  Considering 18 U.S.C. § 3661 and the Guidelines in totality, the Supreme Court stated that, "[i]n short, we are convinced that a sentencing court may consider conduct of which a defendant has been acquitted." <u>United States v. Watts</u>, 519 U.S. at 154.

Relying on its earlier decision in <u>Witte v. United States</u>, the Supreme Court in <u>United States v. Watts</u> went on to explain why its ruling did not violate the Double-Jeopardy Clause.  The Supreme Court in <u>United States v. Watts</u> reaffirmed its holding that "sentencing enhancements do not punish a defendant for crimes of which he was not convicted, but rather increase his sentence because of the manner in which he committed the crime of conviction."  519 U.S. at 154 (citing <u>Witte v. United States</u>, 515 U.S. at 395).

### 2. **The Tenth Circuit's Relevant-Conduct Jurisprudence.**

Tenth Circuit caselaw adheres closely to the Supreme Court's results in <u>Witte v. United States</u> and <u>United States v. Watts</u>.  In <u>United States v. Coleman</u>, 947 F.2d 1424 (1991), the defendant, Troy Coleman, appealed the district court's enhancement of his sentence for firearms possession after he was convicted of conspiracy to possess and possession of a controlled substance with intent to distribute, but was acquitted of using or carrying a firearm during and in relation to a drug trafficking crime.  <u>See</u> 947 F.2d at 1428.  The Tenth Circuit acknowledged that courts had taken various positions whether a sentence may be enhanced for firearms possession despite a defendant's acquittal of firearms charges.  <u>See</u> <u>United States v. Coleman</u>, 947 F.2d at 1428-29 (citing <u>United States v. Duncan</u>, 918 F.2d 647, 652 (6th Cir. 1990)("[A]n acquittal on a firearms

carrying charge leaves ample room for a district court to find by the preponderance of the evidence that the weapon was possessed during the drug offense."); United States v. Rodriguez, 741 F.Supp. 12, 13-14 (D.D.C. 1990)(refusing to apply 2-level enhancement for firearms possession, because "[t]o add at least 27 months to the sentence for a charge of which the defendant was found not guilty violates the constitutional principle of due process and the ban against double jeopardy")).

Without discussion related to the standard of proof a sentencing court should use to make factual findings, the Tenth Circuit held that the district court did not err in enhancing Coleman's sentence for possession of a firearm. See United States v. Coleman, 947 F.2d at 1429. The Tenth Circuit based its conclusion on evidence that: (i) two weapons had been located at the arrest scene; (ii) the weapons were handled at will by individuals who lived at the house; and (iii) the weapons were kept for the protection of conspiracy participants and the narcotics involved. See United States v. Coleman, 947 F.2d at 1429. The Tenth Circuit summarized that, in reviewing federal caselaw, it found "persuasive the decisions that have allowed a sentencing court to consider trial evidence that was applicable to a charge upon which the defendant was acquitted." United States v. Coleman, 947 F.2d at 1429.

In United States v. Washington, 11 F.3d 1510 (10th Cir. 1993), the defendant, Patrick Washington, argued that the United States should prove drug quantities used as relevant conduct to establish a defendant's offense level by clear-and-convincing evidence rather than by a preponderance of the evidence. See 11 F.3d at 1512. The defendant objected to his sentencing, because the drug quantity that the district court considered as relevant conduct, and which the court found by a preponderance of the evidence, increased his guideline sentence range from 210 to 262 months, to life. The defendant argued "that because the additional drug quantities effectively resulted in a life sentence a higher standard of proof should be required." United States v.

Washington, 11 F.3d at 1515.

Although the Tenth Circuit in United States v. Washington "recognize[d] the strong arguments that relevant conduct causing a dramatic increase in sentence ought to be subject to a higher standard of proof," it held that "the Due Process Clause does not require sentencing facts in the ordinary case to be proved by more than a preponderance standard." 11 F.3d at 1516 (citing McMillan v. Pennsylvania, 477 U.S. at 84). While the phrase "ordinary case" might suggest there are exceptions, the Tenth Circuit's remaining language indicated that it was shutting the door on that possibility. The Tenth Circuit concluded that, "[a]t least as concerns making guideline calculations[,] the issue of a higher than a preponderance standard is foreclosed in this circuit." United States v. Washington, 11 F.3d at 1516. Finally, more recent Tenth Circuit decisions -- issued subsequent to the Supreme Court's holdings in Witte v. United States and United States v. Watts -- have reaffirmed the Tenth Circuit's position regarding the sentencing court's consideration of relevant conduct. See United States v. Valdez, 225 F.3d 1137, 1143 n.2 (10th Cir. 2000)(rejecting the defendant's argument that a dramatic increase in a sentence because of a sentencing judge's finding of additional amounts of methamphetamine associated with acquitted charges entitled the defendant to a clear-and-convincing evidence standard at sentencing, and noting that the Tenth Circuit "foreclosed by binding precedent" this argument); United States v. Constantine, 263 F.3d 1122, 1125 n.2 (10th Cir. 2001)(same).

## ANALYSIS

Goree's December 11, 2010 arrest involved the same course of conduct as the November 22, 2010 arrest for which the Court will sentence him. The offenses bear a high degree of similarity, because they both involved the illegal possession of firearms. The offenses appear to fit within a regular pattern of conduct, because this is the third such offense that Goree has committed within

the last year and a half.  Finally, the time interval between the two 2010 arrests was close in time, which suggests that the offenses comprise an ongoing series of offenses.  The Court will therefore overrule Goree's objection to the Re-Disclosed PSR's use of the December 11, 2011 arrest as relevant conduct.

Goree objects to the Re-Disclosed PSR's use of his December 11, 2010 arrest to increase his total offense level by six.  See Objections ¶¶ 3, 14, at 2, 14.  Goree objects to the references to or uses of the December 11, 2010 arrest to increase his offense level in paragraphs 16, 17, 18, 19, 20, 26, 27, 29, 55, and 99.  See Objections ¶¶ 3, 9, 10, 11, 12, 14, at 2-5.  Goree argues that the incident in this case, felon in possession of pistols resulting from a traffic stop, and the December 11, 2010 case, aggravated burglary involving possible possession by a co-defendant, are not factually similar. See Objections ¶ 7, at 4.  Goree argues that the inclusion of the December 11, 2010 incident as relevant conduct requires an impermissible series of assumptions and guesses.  See Objections ¶ 7, at 4.

The United States asserts that the December 11, 2010 arrest is relevant conduct because it involves the same course of conduct as the offense of conviction.  See Response ¶ 2, at 2 (citing U.S.S.G. § 1B1.3(a)(2) (2010)).  The United States argues that the offenses constitute the same course of conduct, because: (i) the two incidents are the same offense and "bear the highest possible degree of similarity"; (ii) Goree has repeatedly demonstrated the same conduct, as he was also charged as a felon in possession of a firearm in June 2009, although those charges were dropped; and (iii) the time interval between the two instances is extremely short.  Response ¶ 2, at 3-4.

U.S.S.G. § 1B1.3(a)(2) provides that the base offense level shall be determined, in part, on the basis of all acts and omissions that were "part of the same course of conduct or common scheme or plan as the offense of conviction."  U.S.S.G. § 1B1.3(a)(2).  Application Note 9(B) further defines

-14-

what qualifies as "the same course of conduct." U.S.S.G. § 1B1.3(a)(2) cmt. n.9(B). The guidelines classify offenses as the same course conduct if "they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." U.S.S.G. §1B1.3(a)(2) cmt. n.9(B). The factors that are appropriate to consider when determining whether offenses are sufficiently related are: (i) the degree of similarity of the offenses; (ii) the regularity (repetitions) of the offenses; and (iii) the time interval between the offenses. U.S.S.G. § 1B1.3(a)(2) cmt. n.9(B).

## I.     THERE IS A HIGH DEGREE OF SIMILARITY BETWEEN THE NOVEMBER 22, 2010 ARREST AND THE DECEMBER 11, 2010 ARREST.

The Tenth Circuit, in United States v. Windle, 74 F.3d 997 (10th Cir. 1996), held that the district court properly applied a 2-level increase for the involvement of five firearms where, although the defendant was arrested for being in possession of one gun, the defendant had been linked during a five-month period before his arrest to five firearms. See 74 F.3d at 1000. The Tenth Circuit stated: "In this case, the offenses were not merely similar but identical. The offenses included the unlawful possession of five firearms throughout a four to five month period." United States v. Windle, 74 F.3d at 1000. In United States v. Moore, 416 F.App'x 715 (10th Cir. 2011), the Tenth Circuit affirmed a district court sentence that increased the total offense level for possession of five firearms where a photograph showed the defendant with three firearms sixteen days before his arrest as a felon in possession of two different firearms. See 416 F.App'x at 719.

The Tenth Circuit has also held that a sentencing court may "attribute to a defendant weapons possessed by his codefendants if the possession of weapons was known to the defendant or reasonably foreseeable by him." United States v. Smith, 131 F.3d 1392, 1400 (10th Cir. 1997)(citing United States v. McFarlane, 933 F.2d 898, 899 (10th Cir. 1991)). In United States v.

Smith, police found a loaded semiautomatic firearm in the garage near the entrance to the defendant's drug lab. See 131 F.3d at 1400. The Tenth Circuit held that "[t]his proximity to the offense is enough to establish the appropriateness of the [weapon possession] enhancement." United States v. Smith, 131 F.3d at 1400. Generally, in felon-in-possession cases under 18 U.S.C. § 922(g), constructive possession is enough. United States v. Kitchell, 653 F.3d 1206, 1228 (10th Cir. 2011). Constructive possession requires that a defendant had knowledge of and access to the firearms. See United States v. Kitchell, 653 F.3d at 1228. "Constructive possession may be shown by circumstantial evidence, but the government must show that there was a sufficient nexus between the accused and the contraband." United States v. Vanhook, 130 F.App'x 277, 284 (10th Cir. 2005)(unpublished). A felon-in-possession conviction will be upheld if there is "some evidence supporting at least a plausible inference that the defendant had knowledge of and access to the weapon or contraband." United States v. Jimenez, 205 F.App'x 656, 663 (10th Cir. 2006)(unpublished).

The state criminal complaint indicates that Goree possessed the two rifles. See Henderson Letter at 2. Goree was found in a residence with another individual, Stanley Nazario. See Objections ¶ 5, at 3. Several items belonging to the residence's owner were piled inside the front door of the residence, including two rifles. See Objections ¶ 5, at 3; Henderson Letter at 3. Goree does not argue that he did not know that the weapons were there. See Objections ¶ 5, at 3. The rifles were grouped with a pile of electronics. See Henderson Letter at 3.

Under the lower preponderance-of-the-evidence standard that the government faces at sentencing, these facts establish that Goree constructively possessed the two rifles. Although Goree states that there is no evidence that her "ever possessed, touched or intended to take the rifles, which were found in the house," the United States does not need to establish these facts. See Objections

¶ 5, at 3.  The United States has shown that: (i) Goree and Nazario forced their way into the residence and were committing a burglary; (ii) the rifles were removed from a closet; and (iii) the rifles were piled on the floor with other valuables.  See  Henderson Letter at 3.  It is reasonable to infer from these facts that Goree had access to the rifles, because they were piled on the floor where anyone in the room could reach them, and Goree, at the very least, was in the room when he and Nazario ran towards the front door to avoid arrest.  See Henderson Letter at 3;  United States v. Vanhook, 130 F.App'x at 285 (finding that, the government established access sufficient to prove constructive possession where "the jury could have reasonably inferred . . . that although Vanhook slept on the living room couch, he kept his personal belongings in the unfurnished bedroom and therefore could easily access Sligh's bedroom [and the firearms] through the closet").  Moreover, the United States has established a sufficient nexus between Goree and the contraband, because the items were removed from the closet and placed in a pile of valuables, that it is more likely than not, Goree and Nazario intended to steal.  United States v. Vanhook, 130 F.App'x at 284.  The standard for determining a fact at sentencing is much lower than the beyond-a-reasonable-doubt standard of conviction; the United States has proven, however, "some evidence supporting at least a plausible inference that the defendant had knowledge of and access to the weapon or contraband," which is all the Tenth Circuit requires to uphold a felon-in-possession conviction.  United States v. Jimenez, 205 F.App'x at 663.  Furthermore, the Tenth Circuit has found that the proximity of weapon to an offense is enough to establish possession for the purposes of sentencing.  See United States v. Smith, 131 F.3d at 1400.  Here, the weapons were in sufficient proximity to the offense and to Goree, because the rifles were two of the items that Goree and Nazario apparently intended to steal from the residence before the police interrupted the burglary.

While Goree was charged with different offenses in the November 22, 2010 arrest and the

December 11, 2010 arrest, the underlying conduct was the same. During the November 22, 2010 incident, Goree illegally possessed firearms in his car, and during the December 11, 2010 incident, Goree illegally possessed firearms in the residence. The circumstances under which Goree possessed the weapons were different but the fact of possession during each incident remains the same. Additionally, the Re-Disclosed PSR indicates that Goree was charged with several state offenses that indicate he possessed the rifles including: (i) Aggravated Burglary (Armed After Entering); (ii) Larceny (Firearm); (iii) Conspiracy to Commit Aggravated Burglary (Armed After Entering); and (iv) Possession of a Firearm/Destructive Device by a Felon. All of these charges indicated that the offenses and underlying conduct on December 11, 2010 were the same as the offense on November 22, 2010. The Court therefore concludes that there is a high degree of similarity between the offenses Goree committed on November 22 and December 11, 2010. See United States v. Windle, 74 F.3d at 1000 ("In this case, the offenses were not merely similar but identical. The offenses included the unlawful possession of five firearms throughout a four to five month period.").

## II.     GOREE HAS REPEATEDLY ENGAGED IN THE SAME CONDUCT.

Goree appears to regularly engage similar behavior and participate in activities that involves firearms. The Tenth Circuit requires that "at least two instances must exist to satisfy the . . . regularity requirement." United States v. Boyd, No. 99-3227, 2000 WL 488479, at *3 (10th Cir. Apr. 25, 2000)(unpublished). Goree, during both his November 22 and December 11, 2010 arrests, possessed firearms illegally. Additionally, the USPO reports that Goree engaged in similar conduct in June 2009, when police report that Goree used a black handgun to strike another male during an altercation. See Re-Disclosed PSR ¶ 50, at 22. The charges there were, however, ultimately dropped, because the police could not locate the victim. See Re-Disclosed PSR ¶ 50, at 22. During

a protective sweep of Goree's home, when he was taken into custody for the June 2009 arrest, the police discovered three rifles and miscellaneous ammunition in plain view. See Re-Disclosed PSR ¶ 50, at 23. The Court, therefore, has evidence of three separate instances of Goree engaging in the same conduct. The Court finds that the requirement that the defendant repeatedly engage in the same conduct is satisfied.

### III.    THE TIME INTERVAL BETWEEN THE OFFENSES IS SHORT.

The space between the November 22, 2010 arrest and the December 11, 2010 arrest was nineteen days. There is a temporal connection between these offenses when they occur less than three weeks apart. The Tenth Circuit has upheld as relevant conduct offenses that occurred farther apart. See United States v. Boyd, 2000 WL 488479, at *3 (finding relevant conduct where "less than three months elapsed between the first and second incident"); United States v. Windle, 74 F.3d at 1000 (finding relevant conduct where two incidents occurred within a five-month period).

Goree objected to paragraphs 16, 17, 18, 19, 20, 26, 27, 29, 55, and 99 of the Re-Disclosed PSR, because it used or referred to his December 11, 2010 arrest to enhance his total offense level in the guidelines calculation. See Objections ¶¶ 3, 9, 10, 11, 12, 14, at 2-5. Because the United States has established that the December 11, 2010 arrest is relevant conduct, the Court will deny Goree's Objections to those paragraphs and enhancements. The Re-Disclosed PSR, therefore, correctly calculated Goree's total offense level to be 25, including a 2-level increase because the offense involved between three and seven firearms and a 4-level increase for using a firearm in another offense. See Re-Disclosed PSR ¶¶ 27, 29, 99, at 9, 33.

**IT IS ORDERED** that the objections to paragraphs 16, 17, 18, 19, 20, 26, 27, 29, 55, and 99 of the Re-Disclosed Presentence Investigation Report in the Defendant's Objections to Presentence Report and Request for Variance, filed July 6, 2011 (Doc. 27), are overruled. The Court

will address Goree's other objections and his motion for a variance at the sentencing hearing, and in a subsequent sentencing memorandum opinion.

                                                                      _____
                                                                      UNITED STATES DISTRICT JUDGE

*Counsel*:

Kenneth J. Gonzales
  United States Attorney
Shammara Henderson
  Assistant United States Attorney
Albuquerque, New Mexico

       *Attorneys for the Plaintiff*

Stephen P. McCue
  Federal Public Defender
Albuquerque, New Mexico

       *Attorney for the Defendant*