IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                 No. CR 11-0285 JB

YUMI DWAYNE GOREE,

       Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Objections to Presentence Report and Request for Variance, filed July 6, 2011 (Doc. 27)("Objections"). The Court held a sentencing hearing on October 26, 2011. The primary issues are: (i) whether the Presentence Investigation Report (disclosed on June 9, 2011)("PSR") should reflect that the presentence interview was conducted via video-conference; (ii) whether the Court should order that Defendant Yumi Dwayne Goree receive credit for his 142 days in custody; (iii) whether the Court should order that his federal and state sentences run concurrently; (iv) whether the PSR impermissibly comments on Goree's silence; and (v) whether the Court should vary to a sentence of 48 months. The Court will amend paragraph 55 of the PSR to reflect that the presentence interview was conducted via video-conference. The Court will not order the Bureau of Prisons ("BOP") to accord Goree 142 days credit for his time in custody, but will order that his federal sentence and state sentence run concurrently. The Court will overrule Goree's objection to paragraph 56's references to his silence. The Court will vary downward and impose a sentence of 57-months imprisonment.

### FACTUAL BACKGROUND

On November 21, 2010, Albuquerque Police Department ("APD") officers were dispatched

to a residence in Albuquerque, New Mexico in reference to a residential burglary.  PSR ¶ 7, at 4.

Upon arrival, APD officers determined that no one else was in the home.  See PSR ¶ 7, at 4.  The

officers observed that cabinets and drawers were open, and appeared to have been rummaged

through.  See PSR ¶ 7, at 4.  The officers noted that the kitchen window screen was on the ground

and that the screen to the back bedroom window was bent.  See PSR ¶ 7, at 4.  The home's owner

stated that, when he entered the home, he noticed that his belongings were disturbed and strewn on

the floor.  See PSR ¶ 8, at 4.  He noticed that the kitchen window was open and found that his Glock

19 handgun, serial number LDT838, was missing.  See PSR ¶ 8, at 4.  Several of his belongings

were lying on the kitchen table and couch, as if they were prepared to be taken somewhere.  See PSR

¶ 8, at 4.  On November 22, 2010, an APD officer ("Officer 1") initiated a traffic stop on a 1994

Cadillac Sedan and, when the vehicle pulled over, made contact with the driver, Goree.  PSR ¶ 9,

at 4.  Goree explained that he had bought the vehicle two weeks before, and had not yet registered

or insured the vehicle.  See PSR ¶ 9, at 4.  Another officer ("Officer 2") arrived at the scene and

spoke to Goree while Officer 1 completed the citations.  PSR ¶ 9, at 4.  Officer 2 noted that Goree

avoided eye contact and appeared nervous.  See PSR ¶ 10, at 5.  When asked why he was nervous,

Goree responded that he was on parole, but refused to say for what he was on parole.  See PSR ¶ 10,

at 5.  Officer 2 remarked that the keyhole to the trunk was punched out.  See PSR ¶ 10, at 5.  Goree

opened the trunk to demonstrate that the trunk still worked.  See PSR ¶ 10, at 5.  Officer 2 observed

a number of tools in the trunk that the officer identified as being commonly used in burglaries.

See PSR ¶ 10, at 5.  Goree stated that he used the tools in his work as a landscaper.  See PSR ¶ 10,

at 5.

        Officer 2 then asked Officer 1 why Goree was on parole, and the officers determined that

he was on parole for Burglary and Possession of Burglary Tools.  See PSR ¶ 11, at 5.  The officers

asked about the tools, and Goree, changing his story, stated he was not aware that the tools were there.  See PSR ¶ 11, at 5.  The officers then took Goree into custody.  See PSR ¶ 11, at 5.  One of the officers approached the vehicle from the passenger side and observed a black handgun in a black holster sitting in a pouch behind the front passenger seat.  See PSR ¶ 12, at 5.  Further investigation revealed that Goree had been previously convicted of several felonies.  See PSR ¶ 12, at 5.  The officers advised Goree of his rights.  See PSR ¶ 12, at 5.  An investigator was called to the scene and discovered a second firearm in the same location as the first.  See PSR ¶ 13, at 5.  The firearm was a black Glock 19 (serial number LDT838) containing fifteen rounds of Winchester 9 mm Luger caliber hollow point ammunition.  See PSR ¶ 13, at 5.  The second firearm was a silver/nickel plated Taurus 605 (serial number SH455539) containing five rounds.  See PSR ¶ 13, at 5.  During an inventory search, officers also found a jar containing a green, leafy substance, which officers identified as less than one ounce of marijuana.  See PSR ¶ 15, at 6.

On December 11, 2010, less than three weeks after his arrest, Goree was again arrested for Possession of a Firearm by a felon.  See PSR ¶ 18, at 6.  APD officers were dispatched in reference to a residential burglary in progress at a private residence in Albuquerque.  See PSR ¶ 18, at 6.  The officers observed two males exiting the residence and ordered them to come out with their hands up.  See PSR ¶ 18, at 6.  The individuals ran to the front of the residence, and Goree, later identified as one of the individuals, was taken into custody.  See PSR ¶ 18, at 6.  A walk-through of the residence revealed that the two individuals kicked open the second story rear door to enter the home.  See PSR ¶ 19, at 6.  The residence was "ransacked" and valuables were piled at the front door.  PSR ¶ 19, at 6.  A .380 caliber handgun was also moved.  See PSR ¶ 19, at 6-7.

## PROCEDURAL BACKGROUND

On February 10, 2011, a federal grand jury indicted Goree on charges that he was a felon in

possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  See Redacted Indictment, filed February 10, 2011 (Doc. 2).  On April 6, 2011, Plaintiff United States of America and Goree entered into a plea agreement, made pursuant to rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, in which Goree pled guilty to the charge contained in the Indictment.  See Plea Agreement ¶ 3, at 2, filed April 6, 2011 (Doc. 24).  Goree agreed that he would not seek a downward departure or variance from the applicable sentencing guideline range.  See Plea Agreement ¶ 9(b), at 5.

The United States Probation Office ("USPO") disclosed the PSR in this matter on June 9, 2011.  See PSR at 2.  The PSR calculates a base offense level of 20 pursuant to U.S.S.G. § 2K2.1(a)(4)(A).  See PSR ¶ 28, at 8.  The PSR applies a 2-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(1)(A), because the offense involves between three and seven firearms.  See PSR ¶ 29, at 9.  The PSR applies another 2-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(4)(A), because the Glock 19 was stolen.  See PSR ¶ 30, at 9.  The PSR then increases the offense level 4 levels pursuant to U.S.S.G. § 2K2.1(b)(6), because a firearm was used or possessed in connection with another felony offense.  See PSR ¶ 31, at 9.  The USPO then reduces the adjusted offense level 3 levels for acceptance of responsibility.  See PSR ¶ 36, at 10.  The PSR calculates Goree's total offense level as 25.  See PSR ¶ 37, at 10.  The PSR notes that, since age fifteen, Goree has been convicted of criminal offenses eight times and has been arrested another eight times.  See PSR ¶¶ 38-54, at 10-23.  The PSR calculates that Goree has a criminal history category of V based on 10 criminal history points.  See PSR ¶ 46, at 19.  A total offense level of 25 and a criminal history category of V results in a guideline imprisonment range of 100 to 125 months.  See PSR ¶ 101, at 33.  Pursuant to U.S.S.G. § 5G1.1(c)(1), however, the guideline imprisonment range is 100 to 120 months because the maximum term of imprisonment under 18 U.S.C. § 924(a)(2) is ten years.  See

PSR ¶¶ 100-101, at 33-34.  On June 28, 2011, the USPO re-disclosed the PSR.  See Re-Disclosed PSR at 2.  In the Re-Disclosed PSR, the USPO calculates that Goree's criminal history category is IV, based on 8 criminal history points, because an intervening arrest did not separate two of the offenses.  See Re-Disclosed PSR ¶¶ 42-44, at 16-19.  A total offense level of 25 and a criminal history category of IV establish a guideline imprisonment range of 84 to 105 months.  See Re-Disclosed PSR ¶ 99, at 33.

On July 6, 2011, Goree filed his Objections, which raise a number objections to the information contained in the Re-Disclosed PSR.  Goree contends that the Re-Disclosed PSR includes conduct unrelated to the federal offense for which he is being sentenced and that the total offense level should be 19 with a criminal history category of IV resulting in a guideline range of 46 to 57 months.  See Objections at 1, 5.  Goree objects to the inclusion of paragraphs 16 through 20 in the "offense conduct" section of the Re-Disclosed PSR, because those paragraphs relate to Goree's December 11, 2010 arrest and are not relevant conduct to the November 22, 2010 arrest for which the Court is sentencing him.  See Objections ¶¶ 3-7, at 2-4.  Goree also objects to paragraph 26, to the extent that it includes in the guidelines calculation weapons found on December 11, 2010. See Objections ¶ 9, at 4.  Goree objects to paragraph 27 to the extent that it assesses a 2-level increase for possession of between three and seven firearms,  because it includes weapons from the December 11, 2010 arrest.  See Objections ¶ 10, at 4.  Goree further objects to paragraph 29 to the extent that it assesses a 4-level increase for possession of firearms not charged in this case in connection with the December 11, 2010 arrest.  See Objections ¶ 11, at 4.  Finally, Goree objects to the guideline calculation in paragraph 99 because it reflects enhancements for the December 12, 2010 arrest.  See Objections ¶ 14, at 5.

Goree also raises objections unrelated to the December 11, 2011 arrest conduct.  Goree

objects to the Re-Disclosed PSR's "custodial status" section to the extent it implies that Goree will receive credit for 142 days in custody as of July 8, 2011.  Objections ¶ 2, at 2.  Goree also argues that the federal and state sentences should run concurrently.  See Objections ¶ 2, at 2.  Goree objects to paragraph 55 to the extent that it fails to mention that the PSR interview was conducted via video conference.  See Objections ¶ 12, at 5.  Lastly, Goree objects to paragraph 56 to the extent that it contains a comment on Goree's silence.  See Objections ¶ 13, at 5.

In addition to his objections, Goree requests that the Court vary downward to a sentence of 48 months.  See Objections ¶ 15, at 5.  Goree represents that, because the PSR's calculation of the guideline range was substantially higher than the parties contemplated, the United States has agreed to modify the Plea Agreement to permit Goree to seek a departure or variance.  See Objections at 5 n.1.  Goree asserts that the PSR sets out his social and family history, and demonstrates that: (i) his mother abandoned Goree and his younger brother when he was seven years old; (ii) he grew up in the New Mexico foster care system; and (iii) he never had a stable, loving upbringing. See Objections ¶ 15, at 5-6.  Goree argues that his "criminal history is entirely understandable and predictable considering the difficulties of his young life."  Objections ¶ 15, at 6.  He contends that a sentence of 48-months imprisonment would be sufficient, but not greater than necessary, to satisfy the goals of federal sentencing.  See Objections ¶ 16, at 6.

On July 13, 2011, the United States filed a response to Goree's Objections.  See United States' Responses to Defendant's Formal Objections to the Presentence Report and Request for Variance, Doc. 27, filed July 13, 2011 (Doc. 29)("Response").  The United States does not object to amending the PSR to reflect that the PSR interview took place via video conference.  See Response ¶ 5, at 6.  The United States also does not oppose concurrent sentences for the state and federal charges.  See Response ¶ 1, at 2.

The United States argues that the question whether Goree should receive 142 days of credit is not properly before the Court, because credit should be computed following the commencement of a sentence.  See Response ¶ 1, at 1-2 (citing 18 U.S.C. § 3585(b); United States v. Wilson, 112 U.S. 329, 330 (1992)).  The United States argues that the December 11, 2010 arrest is relevant conduct, because it is part of the same course of conduct.  See Response ¶ 2, at 2-3 (citing U.S.S.G. § 1B1.3(a)(2)).  The United States asserts that the November 22, 2011 arrest, for which the Court is sentencing Goree, and the December 11, 2010 arrest fall within the same course of conduct, because of the degree of offenses' similarity, the offenses' regularity, and the time interval between the offenses.  See Response ¶ 2, at 2-5.  The United States contends that, for relevant conduct, the conduct need not be adjudicated or result in a conviction; the United States need only prove the conduct by a preponderance of the evidence.  See Response ¶ 3, at 5.  Finally, the United States argues that the PSR does not impermissibly comment on Goree's silence, because such silence may bear upon the determination of lack of remorse or acceptance of responsibility, so long as no adverse inference is drawn from the silence in relation to factual determinations.  See Response ¶ 6, at 7 (citing Mitchell v. United States, 526 U.S. 314 (1999)).

The United States concedes that Goree had "an extraordinarily difficult childhood." Response ¶ 7, at 7.  The United States asserts, however, that, as an adult, Goree has been arrested at least fifteen times and that he has had numerous opportunities to reform his behavior. See Response ¶ 7, at 7.  The United States argues that Goree has failed to take advantage of his many opportunities to change the course of his life.  See Response ¶ 7, at 7.  The United States asserts that no variance should be granted and that a sentence within the guideline range of 84 to 105 months is appropriate.  See Response ¶ 7, at 7.

On August 8, 2011, the United States submitted Goree's state criminal complaint and other

documents concerning Goree's state case as proof of the December 11, 2010 arrest.  See Letter from

Shammara Henderson to the Court at 1 (dated August 8, 2011), filed October 18, 2011 (Doc.

35)("Henderson Letter").  The United States asserted that defense counsel, Federal Public Defender

Stephen McCue, stipulated to the admission of those documents as proof of the December 11, 2010

incident.  See Henderson Letter at 1.

The Court held a sentencing hearing on September 14, 2011.  At the hearing, Goree informed

the Court that the United States had agreed to a modification to the plea agreement to allow Goree

to ask for a variance.  See Transcript of Hearing at 4:8-12 (September 4, 2011)(McCue)("Sept. 4,

2011 Tr.").[1]  Goree stated that his request is ultimately that the Court impose a sentence of 48

months.  See Sept 4, 2011 Tr. at 4:13-14 (McCue).  Goree explained that growing up in foster care

played a large role in why he ended up in the criminal justice system, but that he is making progress

in his life.  See Sept 4, 2011 Tr. at 4:19-6 (McCue).  Goree argued that a sentence of 48 months to

run concurrently with a state sentence that is yet to be imposed would be sufficient but not greater

than necessary to satisfy sentencing goals.  See Sept 4, 2011 Tr. at 5:12-6:5 (McCue).

The United States argued that the conduct involved in the December 11, 2010 arrest are the

same acts as those involved in the case before the Court.  See Sept. 4, 2011 Tr. at 6:10-7:3

(Henderson).  The United States asserted that the issue of credit for time served is moot if the Court

makes the federal sentence run concurrently with the state sentence.  See Sept. 4, 2011 Tr. at 7:4-8

(Henderson).  The United States further asserted that the sentencing guidelines recommend that the

sentences run concurrently if the Court finds that the state case is relevant conduct in this matter.

See Sept. 4, 2011 Tr. at 7:8-11 (Henderson).

---

[1]The Court's citations to the transcripts of the hearing refer to the court reporter's original, unedited versions.  Any final transcripts may contain slightly different page and/or line numbers.

Goree argued that "unadjudicated conduct is driving the bus" and that his situation demonstrates "why the guidelines were declared unconstitutional and were only saved by being found to be advisory." Sept. 4, 2011 Tr. at 7:14-18 (McCue). Goree argued that he is really being sentenced for unadjudicated conduct that requires a lesser standard of proof. See Sept. 4, 2011 Tr. at 7:20-23 (McCue).

On October 20, 2011, the Court issued its Memorandum Opinion and Order, overruling Goree's Objections with respect to several paragraphs and finding that Goree's December 11, 2010 arrest was within the same course of conduct as the November 22, 2010 arrest for which the Court is sentencing Goree. See Memorandum Opinion and Order, filed October 20, 2011 (Doc. 36)("MOO"). The Court found that: (i) there was a high degree of similarity between the November 22, 2010 arrest and the December 11, 2010 arrest; (ii) Goree has repeatedly engaged in the same conduct; and (iii) the time interval between the offenses was short. See MOO at 15-19.

In his Objections, Goree notes that the calculation of the guideline range was "substantially higher than that contemplated by the parties" and represented that the United States had "graciously agreed to modify the plea agreement in this case to delete ¶ 9(b), which contained a restriction on [his] right to request a variance or departure." Objections at 5 n.1. On October 20, 2011, Goree re-pled guilty to the Indictment in a plea colloquy before the Honorable Lorenzo F. Garcia, United States Magistrate Judge, and the parties submitted a modified Plea Agreement. See Plea Minute Sheet, filed October 20, 2011 (Doc 37); Plea Agreement, filed October 20, 2011 (Doc. 39)("Modified Plea Agreement"). The Modified Plea Agreement altered paragraph 9(b) so that it now provides:

> Apart from the stipulations set forth in this plea agreement, the United States and the Defendant reserve their rights to assert any position or argument with respect to the sentence to be imposed, including but not limited to the applicability of particular sentencing guidelines, adjustments under the guidelines, departures or variations from the guidelines, and the application of factors in 18 U.S.C. § 3553(a).

Modified Plea Agreement ¶ 9(b), at 5.  In all other respects, the Modified Plea Agreement contained the same provisions as the Plea Agreement.

On October 26, 2011, the Court held a sentencing hearing.  The Court stated that it believed that Goree had some additional objections remaining.  See Transcript of Hearing at 3:9-13 (October 26, 2011)(Court)("Oct. 26, 2011 Tr.").  With respect to whether Goree should receive credit for 142 days in custody, the Court asked if Goree wanted the Court to word the paragraph differently so that the Bureau of Prisons ("BOP") can correctly calculate the credit.  Oct. 26, 2011 Tr. at 3:14-22 (Court).  Goree stated that his real objection to paragraph 2 of the PSR, is whether the Court would run the sentences concurrently to the state sentence, consecutive to the state sentence, or remain silent on that issue.  See Oct. 26, 2011 Tr. at 4:2-4 (McCue).  The Court stated that it thought that the United States was indifferent on that issue and that it was inclined to run the sentences concurrently, because the state sentence is part and parcel of the relevant conduct.  See Oct. 26, 2011 Tr. at 4:5-8 (Court).  The Court asked the United States whether it made sense to run the federal sentence concurrently to the potential state sentence.  See Oct. 26, 2011 Tr. at 4:8-10 (Court).  The United States agreed that it made sense to run the sentences concurrently.  See Oct. 26, 2011 Tr. at 4:11 (Henderson).  The Court stated that it would not order the BOP to assess 142 days of credit, because that is within the BOP's authority to determine, but would indicate that the sentences will run concurrently.  See Oct. 26, 2011 Tr. at 4:16-21 (Court).  The Court also stated that it would note that the parties do not dispute that Goree is entitled to 142 days credit.  See Oct. 26, 2011 Tr. at 4:22-5:9 (Court, McCue).

Looking to Goree's next objection, the Court stated that it would sustain the objection to paragraph 55 of the PSR and would add language indicating that the presentence interview was conducted via video-conference.  See Oct. 26, 2011 Tr. at 5:14-17 (Court).  With respect to the

objection to paragraph 56 of the PSR, which allegedly comments on Goree's silence, the Court

stated that Mitchell v. United States indicates that the Court can rely on the PSR's note that Goree

declined to discuss facts related to the offense, his criminal history, or his history of substance abuse.

See Oct. 26, 2011 Tr. at 5:18-22 (Court).  The Court asked what Goree wanted the Court to do with

this objection.  See Oct. 26, 2011 Tr. at 6:3-4 (Court).  The Court explained that this notation in the

PSR is included to inform the Court why it does not have certain information.  See Oct. 26, 2011

Tr. at 6:4-10 (Court).  Goree responded that he would be satisfied with an additional sentence stating

that the Court will not draw an inference from his silence.  See Oct. 26, 2011 Tr. at 6:11-12

(McCue).  The Court asked whether adding the sentence "the Court will . . . draw no inference from

the defendant's decision to follow his counsel's advice" would satisfy Goree.  Oct. 26, 2011 Tr. at

6:13-15 (Court).  Goree agreed that such an addition was satisfactory.  See Oct. 26, 2011 Tr. at 6:16

(McCue).  The United States and the USPO also indicated that they had no problem with adding

such a sentence to the PSR.  See Oct. 26, 2011 Tr. at 6:19-23 (Court, Henderson, Probation Officer).

Having addressed all of Goree's remaining objections, the Court asked whether the United

States moved for a third-level reduction to the total offense level for acceptance of responsibility.

See Oct. 26, 2011 Tr. at 7:18-19 (Court).  The United States then moved for the third level

reduction, see Oct. 26, 2011 Tr. at 7:20 (Henderson), which the Court granted, see Oct. 26, 2011 Tr.

at 7:24-25 (Court).  Goree then argued in support of his request for a variance.  See Oct. 26, 2011

Tr. at 8:3-6 (Court, McCue).  Goree emphasized his difficult childhood.  See Oct. 26, 2011 Tr. at

8:7-9 (McCue).  Goree stated that he was conceived when his mother was raped and she abandoned

him when he was seven years old.  See Oct. 26, 2011 Tr. at 8:9-15 (McCue).  He explained that he

and his brother bounced from one foster home to another throughout his adolescence and that the

experience left him with a multitude of unresolved issues.  See Oct. 26, 2011 Tr. at 15-24 (McCue).

Goree argued that it is not surprising that someone with his background would end up in the criminal justice system.  See Oct. 26, 2011 Tr. at 8:25-9:2 (McCue).  Goree pointed the Court to some of the letters written on his behalf, which describe his fundamentally good and sweet character, and his sense of humor.  See Oct. 26, 2011 Tr. at 9:3-16 (McCue).  He stated that he never expected to live to age twenty-eight, and understands that he needs to change his life.  See Oct. 26, 2011 Tr. at 9:17-21 (McCue).  Goree represented that, now that he has children of his own he understands, he cannot take the easy way out and he wants to make an effort for his children.  See Oct. 26, 2011 Tr. at 9:21-10:4 (McCue).  He argued that, considering what he has been through, a sentence below the guideline range would be sufficient but not greater than necessary to satisfy federal sentencing goals.  See Oct. 26, 2011 Tr. at 10:5-8 (McCue).  He requested a sentence of 48 months with a period of supervised release to follow.  See Oct. 26, 2011 Tr. at 10:9-12 (McCue).  Goree requested that the Court require counseling and vocational training for him during both his period of incarceration and supervised release.  See Oct. 26, 2011 Tr. at 10:12-17 (McCue).

The Court asked how Goree arrived at a sentence of 48-months imprisonment.  See Oct. 26, 2011 Tr. at 10:18-20 (McCue).  Goree stated that a sentence of 48-months imprisonment would be his sentence without the relevant conduct increases for the December 11, 2010 arrest.  See Oct. 26, 2011 Tr. at 19:21-24 (McCue).[2]  He asserted that such a sentence would be in the middle of the guideline range that the parties contemplated before the PSR revealed that Goree was subject to an

---

[2]In his Objections, Goree noted that the relevant conduct increased his total offense level 6-levels.  See Objections ¶ 11, at 4.  Goree received a 2-level increase based on the offense and relevant conduct involving between three and seven firearms under U.S.S.G. § 2K2.1(b)(1)(A).  See PSR ¶ 27, at 9.  He also received a 4-level increase based on the offense and relevant conduct because it involved possession of a firearm in connection with another felony offense under U.S.S.G. § 2K2.1(b)(6).  See PSR ¶ 29, at 9.  Accordingly, without the increases for his relevant conduct, his total offense level is 19.  A total offense level of 19 and a criminal history category of IV, establishes a guideline imprisonment range of 46 to 57 months.

enhancement for that conduct.  See Oct. 26, 2011 Tr. at 11:2-4 (McCue).  Goree then personally spoke to the Court.  He reiterated that he did not believe that he was going to live this long.  See Oct. 26, 2011 Tr. at 11:14-17 (Goree).  Goree asserted that he could not take his own life, but he put himself in dangerous situations so that someone else might.  See Oct. 26, 2011 Tr. at 11:17-19 (Goree).  He stated that he was not asking for sympathy, because he knows that he has done wrong, but asserted that his conduct is a product of a youth where he did not care about anyone else or himself.  See Oct. 26, 2011 Tr. at 11:20-25 (Goree).  He stated that there are a lot of things that he did not understand about how families operate and has always pushed people away.  See Oct. 26, 2011 Tr. at 11:25-12:4 (Goree).  Goree recalled it being hard to understand family and love as a child, because he was taken from his mother, and stated that he promised himself that, if he had kids, he would change his family pattern.  See Oct. 26, 2011 Tr. at 12:5-13 (Goree).  He represented that he tried to get his General Educational Development or General Equivalency Diploma ("GED"), but failed the test, and the pressure of trying to provide for his family led him back to the streets. See Oct. 26, 2011 Tr. at 12:14-13:2 (Goree).  Goree said that he could do his time, but that he worried about his daughter and son also doing his time.  See Oct. 26, 2011 Tr. at 13:3-9 (Goree). He stated that he always seems to fail, he does not know where to turn for help, and he has a hard time accepting help when it is offered.  See Oct. 26, 2011 Tr. at 13:10-24 (Goree).  Goree apologized to the State, to his children's mother, and to his children.  See Oct. 26, 2011 Tr. at 14:10-13 (Goree). He stated that he wants to do his time and just get back to his children.  See Oct. 26, 2011 Tr. at 14:14-17 (Goree).

The United States then responded to the request for a variance.  The United States conceded that Goree's personal history is much worse than what it often sees in cases.  See Oct. 26, 2011 Tr. 14:23-15:1 (Henderson).  In recognition of his personal history, the United States suggested that the

Court vary two offense levels to a guideline range of 70 to 87 months or three offense levels to a guideline range of 63 to 78 months, but argued that a sentence of 48 months was not appropriate. See Oct. 26, 2011 Tr. at 15:1-6 (Henderson).  The United States asserted that, while Goree's personal history is extreme, so too is his lengthy criminal history.  See Oct. 26, 2011 Tr. at 15:6-8 (Henderson).  The United States asserted that Goree has been arrested at least fifteen times as an adult.  See Oct. 26, 2011 Tr. at 15:8-12 (Henderson).

## ANALYSIS

The Court will amend paragraph 55 of the PSR to reflect that the presentence interview was conducted via video-conference.  The Court will not order that the BOP accord Goree 142 days credit for his time in custody, but will order that the federal sentence and state sentence run concurrently.  The Court will overrule Goree's objection to paragraph 56.  The Court will vary downward and impose a sentence of 57-months imprisonment.

**I.      THE COURT WILL SUSTAIN IN PART AND OVERRULE IN PART GOREE'S REMAINING OBJECTIONS TO THE PSR.**

The Court will sustain Goree's objection to paragraph 55 of the Re-Disclosed PSR, because the United States does not oppose altering the PSR to reflect how the presentence interview was conducted.  The Court will overrule the objection to the custodial status section of the PSR insofar as Goree objects to the characterization of the 142 days he has spent in custody.  The Court will, however, sustain the objection to the custodial status section, and order that the federal and state sentences run concurrently.  The Court also overrules the objection to paragraph 56's references to Goree's silence, but notes that the Court draws no adverse inference from his silence.

**A.      THE COURT WILL SUSTAIN GOREE'S OBJECTIONS TO PARAGRAPH 55 OF THE RE-DISCLOSED PSR.**

Goree objects to paragraph 55 of the Re-Disclosed PSR to the extent that it fails to mention

-14-

that the PSR interview was conducted via video-conference.  See Objections ¶ 12, at 5.  The United States does not object to changing the PSR to reflect that the conference took place via video-conference.  See Response  ¶ 5, at 6.  At the hearing, the Court stated that it would sustain the objection to paragraph 55 of the PSR and would add language indicating that the presentence interview was conducted via video-conference.  See Oct. 26, 2011 Tr. at 5:14-17 (Court). The Court will sustain Goree's objection and modify paragraph 55 to indicate that the conference took place via video-conferencing.

### B.   THE COURT WILL SUSTAIN IN PART AND OVERRULE IN PART GOREE'S OBJECTION TO THE RE-DISCLOSED PSR'S CUSTODIAL STATUS SECTION.

Goree objects to the "custodial status" section of the Re-Disclosed PSR to the extent that it implies that he will receive credit for 142 days of custody as of July 8, 2011.  Objections ¶ 2, at 2.  Goree is currently in federal custody on a Writ of Habeas Corpus Ad Prosequendum, and Goree argues that, because he is in primary state custody[3] he will not receive credit against his federal sentence for his time spent in custody.  See Objections ¶ 2, at 2.  The United States concedes that Goree is entitled to credit for time served in official custody prior to commencement of his sentence, but argues that computation of credit for time served is not an issue properly before the Court.  See Response ¶ 1, at 1.  Goree, in objecting to his custodial status, also asserts that the sentence that the Court imposes should run concurrently with the sentence in the pending state case.  See Objections

---

[3]Because Goree was in state custody for his December 11, 2010, state arrest, the Honorable Richard L. Puglisi, former Chief United States Magistrate Judge, issued an Order for Writ of Habeas Corpus Ad Prosequendum, filed February 15, 2011 (Doc. 5)("Order").  The Order directs the Director of the Bernalillo County Metropolitan Detention Center, Albuquerque, New Mexico to surrender Goree to the United States Marshals Service for the District of New Mexico and states that Goree will remain in the United States Marshals' custody until the federal prosecution is complete. See Order at 1.

¶ 2, at 2.  The United States does not oppose concurrent sentences for the federal and state charges.

<u>See</u> Response ¶ 1, at 2.  At the hearing, the Court indicated that it would overrule the objection to

the 142 days of credit and sustain the objection to whether the federal sentence should run

concurrently to the state sentence.  <u>See</u> Oct. 26, 2011 Tr. at 5:11-12 (Court).

18 U.S.C. § 3585(b) provides that a defendant "shall be given credit toward the service of

a term of imprisonment for any time he has spent in official detention prior to the date the sentence

commences."   Section 3585(b) also provides that this time served credit must not have been

"credited against another sentence."  18 U.S.C. § 3585(b).  The Supreme Court of the United States

held, in <u>United States v. Wilson</u>, that a district court may not award credit at sentencing, because

"Congress has indicated that computation of the credit must occur after the defendant begins his

sentence." 503 U.S. at 333.  <u>Accord</u> <u>United States v. Glaze</u>, 132 F.3d 43, 1997 WL 774787, at *1-2

(10th Cir. 1997)(unpublished table decision)("On appeal, Mr. Glaze argues that in light of 18 U.S.C.

§ 3585(b), the district court erred in refusing to award him credit for time served in detention. . . .

[I]t was entirely proper for the district court, at sentencing, to decline to award Mr. Glaze credit for

time served and to leave that determination to the Bureau of Prisons.")(citing <u>United States v.</u>

<u>Wilson</u>, 503 U.S. at 333); <u>United States v. Rodriguez</u>, No. 11-0288, 2011 WL 6831907, at *7

(D.N.M. Dec. 28, 2011)(Browning, J.)("The Court has no authority to tell the [Bureau of Prisons]

how to calculate Rodriguez' credit for the time he has served in state custody, but will make sure

that the cover page to the PSR accurately reflects the time he has served.").  Because the Attorney

General determines credit for time served after a sentence begins, the Court will not order that the

BOP credit Goree with 142 days in custody against his federal sentence.  The Court emphasizes,

however, that the parties agree that Goree should receive credit for his 142 days in custody.

<u>See</u> Response ¶ 1, at 1; Oct. 26, 2011 Tr. at 4:22-5:9 (Court, McCue).  The Court will also indicate,

in its Judgment and Commitment Order, that the parties agree that Goree should receive 142 days credit for his time in custody.

With respect to whether the federal and state sentences should run concurrently, the sentencing guidelines provide that any sentence imposed on a defendant should run concurrently to the remainder of any undischarged term of imprisonment.  See U.S.S.G. § 5G1.3(b).[4]  The United States does not oppose concurrent sentences for the federal and state charges.  See Response ¶ 1, at 2.  Because the sentencing guidelines suggest that the federal and state sentences should run concurrently and because the United States does not oppose this objection, the Court will order that its sentence run concurrently with any sentence imposed that the state court imposes for the December 11, 2010 arrest.

---

[4]U.S.S.G. § 5G1.3 provides:

**(a)**    If the instant offense was committed while the defendant was serving a time of imprisonment . . . or after sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment

**(b)**    If subsection (a) does not apply, and a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of convictions under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct) and that was the bases for an increase in the offense level for the instant offense under Chapter Two (Offense Conduct) or Chapter Three (Adjustments), the sentence for the instant offense shall be imposed as follows:

. . . .

**(2)**    the sentence for the instant offense shall be imposed to run concurrently. . .

U.S.S.G. § 5G1.3.  Here, the offense was relevant conduct which increased the total offense level under Chapter Two (Offense Conduct).  Accordingly, the sentencing guidelines provide that the sentence for the instant offense should run concurrently to the state offense.

-17-

### C.     THE COURT WILL OVERRULE GOREE'S OBJECTION TO THE RE-DISCLOSED PSR' PARAGRAPH 56.

Goree objects to the Re-Disclosed PSR's  paragraph 56 of to the extent that it constitutes a comment on silence.  See Objections ¶ 13, at 5.  Goree asserts that he retains his Fifth Amendment privilege through federal sentencing and that no adverse inference may be drawn from his refusal to discuss details of the offense, his history of substance abuse, or his criminal history.  See Objections ¶ 13, at 5.  The United States argues that the Court may be justified in "drawing inferences from a Defendant's decision to remain silent for certain elements of the sentencing phase."  Response ¶ 6, at 6-7.  Paragraph 56 states: "Please note that defense counsel advised not to discuss the instant offense; the defendant's alcohol or substance abuse history; or the defendant's criminal history."  Re-Disclosed PSR ¶ 56, at 25.  At the hearing, the Court stated that Mitchell v. United States indicates that the Court can rely on the PSR's note that Goree declined to discuss facts related to the offense, his criminal history, or his history of substance abuse.  See Oct. 26, 2011 Tr. at 5:18-22 (Court).  The Court asked what Goree wanted the Court to do with this objection.  See Oct. 26, 2011 Tr. at 6:3-4 (Court).  The Court explained that this notation in the PSR is included to inform the Court why it does not have certain information.  See Oct. 26, 2011 Tr. at 6:4-10 (Court).  The Court asked whether adding the sentence "the Court will . . . draw no inference from the defendant's decision to follow his counsel's advice" would satisfy Goree.  Oct. 26, 2011 Tr. at 6:13-15 (Court).  Goree agreed that such an addition was satisfactory.  See Oct. 26, 2011 Tr. at 6:16 (McCue).  The United States and the USPO also indicated that they had no problem with adding such a sentence to the PSR.  See Oct. 26, 2011 Tr. at 6:19-23 (Court, Henderson, Probation Officer).

The Supreme Court held in Mitchell v. United States, that Fifth Amendment protections extend to sentencing, and that a court may not draw an adverse inference from a defendant's silence

at sentencing in determining facts related to the circumstances and details of the crime.  See 526

U.S. at 329.  The Supreme Court refused, however, to express a view on "[w]hether silence bears

upon the determination of a lack of remorse, or upon acceptance of responsibility."  Mitchell v.

United States, 526 U.S. at 330.  The Tenth Circuit does not appear to have addressed this issue in

the context of a federal court sentencing.  In a habeas corpus case brought under 28 U.S.C. § 2254,

the Tenth Circuit held that it remained "unanswered by the Supreme Court whether a sentencing

court in a non-capital case may, for purposes other than determining the facts of the offense of

conviction, draw an adverse inference from a criminal defendant's refusal to testify or cooperate."

Lee v. Crouse, 451 F.3d 598, 605 (10th Cir. 2006).  Additionally, the Tenth Circuit has found that

a district court did not commit plain error where the district court considered the defendant's refusal

to cooperate with the government when sentencing the defendant to the maximum sentence under

the guidelines and the defendant contended that, if he had cooperated he would have opened himself

to additional criminal liability.  See United States v. Gerby, 41 F.App'x 312, 317 (10th Cir.

2002)(unpublished).  In that case, however, the defendant did not assert his fear of self-incrimination

before the district court.  See United States v. Gerby, 41 F.App'x at 317.

Other courts of appeals have held that silence may be important to determine lack of remorse

or acceptance of responsibility, and can play a role in determining whether to reduce a sentence.

See United States v. Spotted Elk, 548 F.3d 641, 680 (8th Cir. 2008)("We have held that denial of

the Guidelines' downward adjustment for acceptance of responsibility, § 3E1.1, does not violate the

defendant's right to silence.").  In Burr v. Pollard, 546 F.3d 828 (7th Cir. 2008), the United States

Court of Appeals for the Seventh Circuit stated:

> [S]ilence can be consistent not only with exercising one's constitutional right, but
> also with a lack of remorse.  The latter is properly considered at sentencing because
> it speaks to traditional penological interests such as rehabilitation (an indifferent

-19-

criminal isn't ready to reform) and deterrence (a remorseful criminal is less likely to return to his old ways).

546 F.3d at 832.  See United States v. Kennedy, 499 F.3d 547, 553 (6th Cir. 2007)("[T]he district court plainly considered Kennedy's refusal to complete testing in determining his propensity for future dangerousness, rather than in determining facts of the offense. . . . [T]he district court's consideration of Kennedy's refusal was not improper. . . .").

The Court agrees with these Circuit Courts of Appeals that Mitchell v. United States does not limit the Court's ability to consider Goree's refusal to answer questions for the PSR.  It would be difficult for the Court to do its work if a defendant refused to cooperate in putting together a PSR and the USPO could not tell the Court why certain sections are absent.  Also, if a defendant refuses to accept responsibility, the Court needs to that fact.  18 U.S.C. § 3661 provides that "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."  18 U.S.C. § 3661.  In United States v. Watts, the Supreme Court held that this state "embodies the longstanding principle that sentencing courts have broad discretion to consider various kinds of information" and that "the Guidelines did not alter this aspect of the sentencing court's discretion."  519 U.S. 148, 151-52 (1997).  See United States v. Madrid-Gomez, 724 F.Supp.2d 1141, 1152 (D.N.M. 2010)(Browning, J.).  Accordingly, the Court will overrule Goree's objection to paragraph 56 of the Re-Disclosed PSR.

On the other hand, defendants often do not provide information on certain subjects, specifically drug use.  Goree is not alone in his selective non-disclosure.  The Court usually draws little inference from the absence fo such information.  Accordingly, the Court will add a sentence to the PSR stating: "The Court does not draw an adverse inference from the Defendant's decision

to follow his counsel's advice."

## II.   THE COURT WILL VARY DOWNWARD AND IMPOSE A SENTENCE OF 57-MONTHS IMPRISONMENT.

The Court accepts the Modified Plea Agreement.  The Court has, as the record will reflect, carefully reviewed the Re-Disclosed PSR's factual findings, and, with the exception of the changes to paragraphs 55 and 56, adopts the Re-Disclosed PSR's factual findings as its own.  The Court has also reviewed the sentencing guideline calculations in the Re-Disclosed PSR and, there not being any remaining objections to those, the Court adopts those calculations as its own.  The Court has considered the factors set forth in 18 U.S.C. §3553(a)(1)-(7). The offense level is 25 and the criminal history category is IV, which establishes a guideline sentencing range of 84 to 105 months.

The Court notes that Goree was found in the possession of four firearms and ammunition on November 22, 2010, and on December 11, 2010, after having previously been convicted of three felony offenses.  The Court has considered the guidelines, but, in arriving at its sentence, has taken into account not only the guidelines but other sentencing goals.  Specifically, the Court has considered the guideline sentencing range established for the applicable category of offense committed by the applicable category of defendant.  After carefully reviewing the facts and circumstances of Goree's case, the hard life he has experienced, and other mitigating circumstances, the Court concludes that the punishment set forth in the guidelines is not appropriate for this offense. The Court has considered the kinds of sentences established by the guidelines and does not believe it can justify varying down to Goree's requested sentence of 48-months.  The Court believes that the sentence must reflect at least part of the enhancement Goree received because of the relevant conduct and the December 11, 2010 arrest.  Goree would have the Court vary approximately six levels, undermining the effect of the enhancements for the special offense characteristics and his

related conduct.  The United States proposed varying downward two or three levels to a guideline imprisonment range of 70 to 87 months or 63 to 78 months, but argued that a sentence of 48 months was not appropriate.  See Oct. 26, 2011 Tr. at 15:1-6 (Henderson). The Court is reluctant to eliminate the effect of the relevant conduct entirely, but is mindful that Goree will face state charges for that related conduct[5] and that it may be punished separately.  The Court believes that a variance is appropriate in part because, despite his criminal history, Goree has not experienced some of the benefits that the federal system can provide.  Because Goree now has children and because the federal system has the resources to provide Goree with more support, the Court believes that an 84-month sentence is not necessary to achieve the purposes of 18 U.S.C. § 3553(a).  Goree had a very difficult childhood, beginning with his mother's abandonment and proceeding to his unstable upbringing in the foster care system.  The Court believes that Goree's family circumstances, his lack of guidance as a youth, and the fact that it is the relevant conduct pushing his offense range higher justifies a variance.  Accordingly, the Court will vary downward to a sentence of 57-months imprisonment. The United States agreed that a variance of approximately three levels is appropriate, see Oct. 26, 2011 Tr. at 15:1-6 (Henderson), while Goree asked the Court for a six level variance, see Oct.  26, 2011 Tr. at 19:21-24 (McCue).  The Court considered a three-level variance but believes that such a sentence would overemphasize the relevant conduct.  This sentence is a four level variance with a sentence at the low end of the guideline range of 57 to 71 months. Alternatively, this sentence could be viewed as a variance of approximately six offense levels, establishing a guideline range of 46 to 57 months, and that the sentence is at the high end of that range because of his lengthy criminal history, the circumstances of the offense, and the relevant

---

[5]Charges for aggravated burglary are currently pending in state court related to Goree's December 11, 2010 arrest.  See Re-Disclosed PSR ¶ 54, at 24.

conduct. The Court believes that a sentence of 57-months imprisonment is adequate to reflect the seriousness of the offense and to promote respect for the law. Such a sentence will also provide a more just punishment given the mitigating factors here. Furthermore, the Court thinks that a 57 month sentence is a lengthy sentence which will afford adequate deterrence and protect the public. The Court is concerned about the serious nature of the offense and the relevant conduct, but believes that the particular circumstances of the case and the mitigating factors that the Court has mentioned are sufficient to justify the variance and to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. The Court believes that Goree's case highlights his need for some education, training, and care, which this sentence's term of supervised relief will provide, to ensure that he does not repeat his conduct.

The Court believes that a sentence of 57-months imprisonment fully and effectively reflects each of the factors in 18 U.S.C. § 3553(a). While the Court's task, as a district court, is not to arrive at a reasonable sentence -- it is to come up with one that reflects the factors in 18 U.S.C. § 3553(a), see United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007)("[A] district court's job is not to impose a reasonable sentence. Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)." (citation omitted)) -- the Court believes this sentence is reasonable. And perhaps most important in this calculation, the Court believes that this sentence is sufficient, but not greater than necessary to comply with the purposes of punishment Congress set forth in the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987 (codified as amended in scattered sections of 18 U.S.C.). The Court sentences Goree to 57-months imprisonment.

**IT IS ORDERED** that the objections in the Defendant's Objections to Presentence Report and Request for Variance, filed July 6, 2011 (Doc. 27) are sustained in part and overruled in part,

and Defendant Dwayne Yumi Goree's request for a variance is granted in part and denied in part. The Court will amend paragraph 55 of the Presentence Investigation Report ("PSR") to reflect that the presentence interview was conducted via video-conference.  The Court will not order the Bureau of Prisons to accord Goree 142 days credit for his time in custody, but will order that the federal sentence and state sentence run concurrently.   The Court will overrule Goree's objection to paragraph 56.  The Court will vary downward and impose a sentence of 57-months imprisonment.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Kenneth J. Gonzales
   United States Attorney
Shammara Henderson
   Assistant United States Attorney
Albuquerque, New Mexico

        *Attorneys for the Plaintiff*

Stephen P. McCue
   Federal Public Defender
Federal Public Defender's Office
Albuquerque, New Mexico

        *Attorney for the Defendant*